UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEONTAY JOHNSON,
RONALD W. WHITNEY, and
DORIAN WILLIS,

      Plaintiffs,                    No. 13-13672

v.                                     District Judge Matthew F. Leitman
                                       Magistrate Judge R. Steven Whalen

ANTHONY WICKERSHAM, ET AL.,

      Defendants.
_____/

**REPORT AND RECOMMENDATION**

At the time of the events giving rise to this action, Plaintiffs Deontay Johnson, Ronald W. Whitney, and Dorian Willis were inmates at the Macomb County Jail. They have filed a *pro se* civil complaint under 42 U.S.C. § 1983, alleging violation of their First and Fourteenth Amendment rights as a result of the Jail's regulations regarding inmates' receipt of personal mail and magazines. Before the Court is the Defendants' Motion to Dismiss [Doc. #17], referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the Motion be GRANTED IN PART AND DENIED IN PART.

**I.   FACTS**

This is a First Amendment case that centers on a relatively new mail policy at the Macomb County Jail that restricts the publications that inmate are allowed to receive. The amended complaint incorporates as Exhibit A the Macomb County Jail's policy, effective August 15, 2013, regarding inmate mail. The policy restricts incoming mail as follows:

-All personal mail received for inmates must be in the form of a metered

postcard. No stamps allowed.

-Only white postcards no larger than 5" by 7" will be accepted. Nothing shall be affixed to the postcard. No photos.

-All other personal mail will be returned to sender.

-Magazines: Only the following magazines will be allowed in the facility (received directly from the publisher/non-retail distributor): People, Field & Stream, Newsweek, Outside, Time, Readers Digest, The Oprah Magazine, Men's Fitness, Shape, Martha Stewart Living, Parenting and Money Magazine.

-There are no changes to legal/privileged mail or outgoing mail.

In their amended complaint [Doc. #7], Plaintiffs allege that prior to the implementation of this policy, they were permitted to receive African-American oriented magazines such as Ebony and Black Men. Now, the say, The Oprah Magazine is the only "black magazine" allowed. *Id*.

Appended to the amended complaint as Exhibit B are excerpts from the Macomb County Jail Inmate Guide, which sets forth as follows the former policy on books and magazines:

"Soft covered books received directly from a non-retail distributor will be accepted. Prepaid magazine or newspaper subscriptions mailed directly to the inmate will also be accepted. Materials which may create a threat to jail order, or contain sexual, racial or ethnic profanity are prohibited. All reading material is subject to the five (5) item maximum."

In a "supplemental" complaint [Doc. #13], Plaintiff Ronald W. Whitney alleges that a "Deputy Officer, Badge #333" denied him receipt of a letter from an individual in the outside world, on the erroneous basis that it was "received from an inmate to an inmate." *Supplemental Complaint*, Exhibit A.

## II.   STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted."  In assessing a Rule 12(b)(6)

motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff would be entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

The United States Supreme Court has modified the standard for determining whether a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6). In *Bell Atlantic Corp. v. Twombley*, 550 U.S 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2), held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, 127 S.Ct. at 1964-65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 1974.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*. First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 129 S.Ct. at 1949, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]"–'that the pleader is entitled to relief.'" 129 S.Ct. at 1950 (Internal citations omitted).

### III. DISCUSSION

#### A. Limitations on Publications

In 2013, the Macomb County Jail replaced a relatively liberal policy on the receipt of magazines–one that banned only publications that posed a threat to security, including sexually explicit and racially inflammatory material–with a relatively restrictive policy that limited an inmate's choice to 12 specific magazines. The Plaintiffs allege that this new policy violates their rights under the First Amendment. The question before the Court in this Rule 12(b)(6) motion is not whether the Plaintiffs will ultimately prevail, but whether they have sufficiently stated a plausible claim under *Iqbal*, and thus whether this case should go forward to the discovery phase.

While prisoners of course do not enjoy the same degree of liberty as those in free society, neither do they leave all of their constitutional rights at the prison gates. "There is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). When a prison or jail regulation infringes on or limits a constitutional right, "the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safely,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

Prison officials are accorded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 562, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). However, a jail or prison official's decisions

are not immune from judicial scrutiny, and review, while deferential, is not abject. Rather, to determine whether a particular regulation passes the "reasonably related" test, *Turner v. Safely* set fourth four factors for the court to consider: (1) whether there is a valid, rational connection between the prison policy and the legitimate governmental interest asserted to justify it; (2) the existence of alternative means for inmates to exercise their constitutional rights; (3) the impact that accommodation of these constitutional rights may have on other guards and inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives as evidence of the reasonableness of the regulation. *Cornwell v. Dahlberg,* 963 F.2d 912, 917 (6th Cir.1992) (citing *Turner,* 482 U.S. at 89).

The application of the *Turner* factors to particular cases, including restrictions on the receipt of publications, is a fact-driven exercise. In *Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), the Supreme Court applied *Turner* to a Federal Bureau of Prisons regulation that gave wardens discretion to limit an inmate's receipt of publications under certain circumstances.[1] In finding that the regulation passed constitutional muster, the Supreme Court relied on the factual findings of the trial court made after a 10-day bench trial. In *Beard v. Banks*, 548 U.S. 521, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006), the Supreme Court affirmed a lower court's grant of summary judgment in a First Amendment prisoner case,[2] stating the necessity to "examine the

---

[1] *Thornburgh* overruled *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), to the extent that *Martinez*, a pre-*Turner* decision, could be interpreted as having imposed a "least restrictive alternative" analysis on regulations that restricted the receipt of magazines or other publications.

[2] The issue in *Beard* was whether the prison could permissibly bar access to any photographs, newspapers, and magazines to a group of high-security inmates considered to be "the worst of the worst." Based on the evidentiary record, a plurality concluded that the prison had shown that the regulation was reasonably related to a legitimate security interest.

record to see whether the [Defendant], in depositions, answers to interrogatories, admissions, affidavits and the like, has demonstrated 'the absence of a genuine issue of material fact'...."

In her dissenting opinion in *Beard*, Justice Ginsburg criticized the plurality's decision to decide the case under a summary judgment standard, noting that "*Turner* came to us after a full trial," and suggesting that the Court's obeisance to claims of prison security could "immunize all manner of prison regulations from review for rationality." *Id*. 548 U.S. at 556 (dissenting opinion of Ginsburg, J.). In direct response, Justice Breyer, writing the plurality opinion[3], stated:

> "*Turner* requires prison authorities to show more than a formalistic logical connection between a regulation and a penological objective. A prisoner may be able to marshal substantial evidence that, given the importance of the interest, the Policy is not a reasonable one....And with or without the assistance that public interest law firms or clinics may provide, it is not inconceivable that a plaintiff's counsel, through rigorous questioning of officials by means of depositions, could demonstrate genuine issues of fact for trial." 548 U.S. at 535.

Thus, while Justice Breyer and Justice Ginsburg might disagree as to whether the present case should be decided on summary judgment or after full trial, they would both agree that peremptory dismissal under Rule 12(b)(6), with no opportunity for discovery or factual inquiry into the Defendants' expressed "formalistic logical connection" between their restrictive policy on magazines and the need for jail security, is improper.

The regulation at issue in this case is highly restrictive, particularly in comparison to the previous regulation, which permitted a broad range of publications, subject to review by jail authorities. Indeed, the former regulation was more akin to the one the

---

[3] Justice Breyer's lead opinion was joined by Chief Justice Roberts, Justice Kennedy, and Justice Souter. Justice Thomas filed a concurring opinion in which Justice Scalia joined. Justice Stevens filed a dissenting opinion in which Justice Ginsburg joined, and Justice Ginsburg filed a separate dissenting opinion. Justice Alito did not participate.

Supreme Court approved in *Thornburgh v. Abbott*, where the warden made the determination as to whether a particular magazine was "detrimental to the security, good order, or discipline of the institution...." *Id*. 490 U.S. at 416. The Court noted approvingly that "we are comforted by the individualized nature of the determinations required by the regulation." *Id*. Addressing the second *Turner* factor–whether there were alternative means to exercise the constitutional right–the Court stated, "As the regulations at issue in the present case permit a broad range of publications to be sent, received, and read, this factor is clearly satisfied." *Id*. at 418.

By contrast, the regulation in this case provides for no individualized determination of whether a particular publication (for example, Sports Illustrated) poses a security threat, and the Macomb County Jail now offers a remarkably narrow range of publications.[4]

The Defendants make many factual claims and offer many justifications as to why this regulation satisfies the four-prong *Turner* test. For example:

> "Restricting in-coming periodicals to twelve pre-approved titles serves the facility's legitimate penological interest in easing the administrative burden on personnel resources devoted to magazine inspection and redaction while concomitantly providing for the reallocation of those resources to more pressing concerns such as prisoner supervision and control, transportation and escort to and from medical care, screening and classification, and safeguarding at-risk prisoners from self-harm as well as harm by others." *Defendants' Brief*, at 18.

---

[4] The Defendants argue that the Plaintiffs have effectively conceded that The Oprah Magazine is an African-American oriented publication. Although published by an African-American woman, it would be more accurately characterized as a general interest lifestyle magazine, and bears little resemblance to the "black magazines" cited by Plaintiffs, such as Ebony and Black Men. In any event, the pleadings of *pro se* litigants are to be liberally construed. *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard"). It is clear that the Plaintiffs are complaining about their lack of access to culturally specific publications.

At best, Defendants have stated what Justice Breyer in *Thornburgh* called "a formalistic logical connection between a regulation and a penological objective." As Justice Breyer also observed, *Turner* requires more. *Thornburgh*, 548 U.S. at 535.

The Plaintiffs have stated a factually plausible First Amendment claim. They may or may not ultimately prevail, but further factual development and legal analysis are essential. Defendants' motion to dismiss this First Amendment claim should be denied.

### B. Plaintiff Whitney's Supplemental Complaint

Macomb County Jail regulations prohibit the receipt of inmate-to-inmate mail. Mr. Whitney does not challenge that regulation on its face. However, he alleges that a non-party, identified as "Deputy Officers Badge #333," rejected a letter as inmate-to-inmate mail, when in fact it bore a return address of a woman living in Waterford, Michigan.

It is not necessary to decide whether the erroneous rejection of a single piece of mail makes out a viable First Amendment claim, because Mr. Whitney has not alleged the personal involvement of the named Defendants, Anthony Wickersham and Michelle Sanborn. A plaintiff in a § 1983 case must clearly show that a named defendant was personally involved in the allegations underlying the complaint. *Rizzo v. Goode*, 423 U.S. 362, 372, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (liability under § 1983 is predicated upon an affirmative link or connection between the defendant's actions and the claimed deprivations). "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's *personal responsibility* for the claimed deprivation of a constitutional right." *Broder v. Corr. Med. Servs., Inc.,* 2008 WL 704229, at *7 (E.D.Mich. Mar.14, 2008) (emphasis added, quoting *Diebitz v. Arreola,* 834 F.Supp. 298, 304 (E.D.Wis.1993)).

Nor is Ms. Sanborn, the Jail Administrator, or Mr. Wickersham, the mail room

supervisor, liable because they were in supervisory positions. In *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court specifically held that in a § 1983 action, liability cannot be based on a theory of *respondeat superior,* or mere supervisory liability. *See also Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984) (at a minimum, a § 1983 plaintiff must show that a supervisory official at least impliedly authorized, approved and knowingly acquiesced in the unconstitutional conduct of the offending subordinate). Supervisory liability under § 1983 is precluded even if the supervising entity is aware of improper activity of its subordinates and fails to act; it must be shown that the supervisory officials "actively participated in or authorized" the illegal activity. *Poe v. Haydon,* 853 F.2d 418, 429 (6th Cir.1988); *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999).

Mr. Whitney's First Amendment claim based on the alleged erroneous non-delivery of his letter should therefore be dismissed.

### IV.   CONCLUSION

For these reasons, I recommend that the Defendants' Motion to Dismiss [Doc. #17] be DENIED as to the Plaintiffs' First Amendment claims regarding restrictions on the receipt of publications.

I further recommend that the Motion be GRANTED as to Plaintiff Whitney's First Amendment claim based on the failure to deliver a letter to him.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638

F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: September 10, 2014

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 10, 2014, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen