UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEONTAY JOHNSON,
RONALD W. WHITNEY, and
DORIAN WILLIS,

      Plaintiffs,                              No. 13-13672

v.                                        District Judge Matthew F. Leitman
                                             Magistrate Judge R. Steven Whalen

ANTHONY WICKERSHAM, ET AL.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

At the time of the events giving rise to this action, Plaintiff Dorian Willis was an inmate at the Macomb County Jail. He and two other inmates[1] filed a *pro se* civil complaint under 42 U.S.C. § 1983, alleging violation of their First and Fourteenth Amendment rights as a result of the Jail's regulations regarding inmates' receipt of personal mail and magazines. The Court appointed *pro bono* counsel for Mr. Willis, and on December 19, 2014, attorney Caridad Pastor Cardinale filed an appearance on his behalf. On February 26, 2015, Plaintiff, through counsel, filed an amended complaint [Doc. #78].

---

[1] The complaint was originally filed by three Plaintiffs. However, co-Plaintiffs Deontay Johnson and Ronald Whitney have been dismissed.

Before the Court are the Defendants' motion to dismiss [Doc. #81], the Defendants' motion for summary Judgment [Doc. #86], and the Plaintiff's cross-motion for summary judgment [Doc. #91][2], which have been referred for Reports and Recommendations under to 28 U.S.C. § 636(b)(1)(B).  For the reasons discussed below, I recommend as follows:

(1) That Defendants' motion to dismiss [Doc. #81] be GRANTED to the extent that individual Defendants Wickersham and Sanborn be dismissed, but that the County of Macomb be substituted as the proper Defendant;

(2) That Plaintiff's cross-motion for summary judgment [Doc. #91] be DENIED; and,

(3) That Defendant's motion for summary judgment [Doc. #86] be GRANTED, and the amended complaint DISMISSED.

### I.   FACTS

This is a First Amendment case that centers on a mail policy at the Macomb County Jail.  On August 15, 2013, the Jail replaced a relatively liberal policy on the receipt of magazines–one that banned only publications that posed a threat to security, including sexually explicit and racially inflammatory material–with a more restrictive policy that limited an inmate's choice to 12 specific magazines:

---

[2] Plaintiff has incorporated his cross-motion for summary judgment within his response to the Defendants' motion.

"-Magazines: Only the following magazines will be allowed in the facility (received directly from the publisher/non-retail distributor): People, Field & Stream, Newsweek, Outside, Time, Readers Digest, The Oprah Magazine, Men's Fitness, Shape, Martha Stewart Living, Parenting and Money Magazine."[3]

The policy that was replaced provided as follows:

"Soft covered books received directly from a non-retail distributor will be accepted. Prepaid magazine or newspaper subscriptions mailed directly to the inmate will also be accepted. Materials which may create a threat to jail order, or contain sexual, racial or ethnic profanity are prohibited. All reading material is subject to the five (5) item maximum."

In his amended complaint, Plaintiff claims that the 12 magazines permitted by the newer policy did not include publications intended for or directed to minorities, specifically African-American or Hispanic inmates. *Amended Complaint* [Doc. #78], ¶ 7. He claims that the restriction was arbitrary and capricious, and violated his rights under the First Amendment. He claims that he was denied his Fourteenth Amendment right to due process because he was not provided with an opportunity to challenge the exclusion of certain magazines, and that the Defendants violated the Equal Protection Clause of the Fourteenth Amendment "when they instituted the new magazine policy with only twelve magazines–none of which oriented to minority populations." *Id.* ¶¶ 13-14.

Defendant Wickersham, the Macomb County Sheriff, and Defendant Sanborn, the

---

[3] The Macomb County Jail Inmate Guide, which contains the restriction on publications, is contained in Exhibit 2 to Defendant's motion. Plaintiff also submitted a copy of the policy with his *pro se* amended complaint filed on September 18, 2013 [Doc. #7].

Jail Administrator, are both sued in their official capacities. *Id*. ¶¶ 2-3. Plaintiff seeks injunctive and declaratory relief.

Defendant Sanborn was deposed on August 28, 2015. She testified that the new policy, which restricted publications to twelve titles, went into effect on August 15, 2013. *Sanborn Transcript*, Exhibit 1 to Plaintiff's Response/Cross-Motion [Doc. #91], at 9. She said that the jail reverted back to the previous policy about a month before her deposition. *Id*. at 10. When asked how many titles inmates could currently receive, she said, "I don't have a number. It could be anything. It's opened up to anything now. Anything could come in today, next week or a month from now." *Id*. at 17-18. She testified that "[r]ight now they can get in any magazine that they want," with a limitation that they could have only five magazines or books in their cells at one time. *Id*. at 9. And as provided in the reinstated policy, jail officials screen incoming publications for "inappropriate content," which might include "[a] book on how to make a bomb, how to escape, racial hate or pornography, sexually explicit things." *Id*. at 17.

## II. STANDARD OF REVIEW

### A. Dismissal Under Fed.R.Civ.P. 12(b)(6)

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416,

419 (6th Cir. 2001).

In *Bell Atlantic Corp. v. Twombley*, 550 U.S 544 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2), held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, at 555 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*. First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, at 678, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the

> reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]"–'that the pleader is entitled to relief.'" 556 U.S. at 679 (internal citations omitted).

### B. Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v.*

*Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. DISCUSSION

#### A. Defendants' Motion to Dismiss [Doc. #81]

In his amended complaint [Doc. #78], Plaintiff explicitly names Defendants Wickersham and Sanborn in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)(internal citations omitted). Under Eleventh Amendment sovereign immunity, a State may not be sued for money damages. *Id*. However, this Eleventh Amendment immunity does not apply to counties, which are

not considered arms of the state. *Geller v. Washtenaw County*, 2005 WL 3556247, *4 (E.D. Mich. 2005), citing *Akire v. Irving*, 330 F.3d 802, 811 (6th Cir. 2003).

Nevertheless, Plaintiff recognizes that an official capacity claim against County officials who enforce a County policy is, in effect, a claim against the County. As an alternative to simply denying the Defendants' motion to dismiss, he asks the Court to substitute Macomb County as the Plaintiff. *Plaintiff's Response* [Doc. #82], at 2. Defendants as well concede that "the 11th Amendment's prohibition poses no impediment against maintaining this action against Macomb County." *Defendants' Reply* [Doc. #84], at 2. Therefore, Wickersham and Sanborn should be dismissed, but Macomb County should be substituted as the Defendant.

### B. Motions for Summary Judgment [Doc. #86 and Doc. #91]

#### 1. Mootness

When the Plaintiff filed his original *pro se* complaint on August 27, 2013, and when he filed the amended complaint through counsel on February 26, 2015, the highly restrictive magazine policy that is central to this case was in effect. But about a month before Defendant Sanborn's August 28, 2015 deposition, that policy was rescinded and the earlier policy was reinstated. The Plaintiff does not claim that the current policy is unconstitutional. In fact, in an earlier Report and Recommendation I observed:

> "The regulation at issue in this case is highly restrictive, particularly in comparison to the previous regulation, which permitted a broad range of publications, subject to review by jail authorities. Indeed, the former regulation was more akin to the one the Supreme Court approved in

> *Thornburgh v. Abbott* [490 U.S. 401 (1989)], where the warden made the determination as to whether a particular magazine was 'detrimental to the security, good order, or discipline of the institution....' *Id*. 490 U.S. at 416. The Court noted approvingly that 'we are comforted by the individualized nature of the determinations required by the regulation.' *Id*. Addressing the second *Turner* [*v. Safely,* 482 U.S. 78 (1987)] factor–whether there were alternative means to exercise the constitutional right–the Court stated, 'As the regulations at issue in the present case permit a broad range of publications to be sent, received, and read, this factor is clearly satisfied.' *Id*. at 418." *Report and Recommendation*, Doc. #43 at 7.

The Jail's reinstatement of the earlier policy renders Plaintiff's request for injunctive and declaratory relief moot. "If circumstances change after a plaintiff files a complaint to deprive the plaintiff of a 'personal stake in the outcome of the lawsuit,' the action must be dismissed as moot. *Genesis Healthcare v. Symczyk,* ––– U.S. –––, 133 S.Ct. 1523, 1528, 185 L.Ed.2d 636 (2013) (internal quotation marks omitted). 'The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties.' *McPherson v. Michigan High School Athletic Ass'n, Inc.,* 119 F.3d 453, 458 (6th Cir.1997) (internal quotation marks omitted)." *Hadley v. Chrysler Grp., LLC,* 624 F. App'x 374, 379 (6th Cir. 2015). The complaint must therefore be dismissed as to claims for injunctive and declaratory relief.

### 2.   Standing

The parties agree that as a factual matter, Plaintiff did not subscribe or attempt to subscribe to any magazines that were prohibited when the challenged policy was in effect. Rather, Plaintiff obtained magazines through an informal barter system with other inmates, a system where prices were negotiated and payment was made through an

exchange of commissary items. *Plaintiff's Deposition*, Doc. #86, Defendant's Exhibit 3, pp. 70-71. Plaintiff himself did not have subscriptions to *any* magazines, prohibited or otherwise. *Id*. pp. 70, 75.[4] Plaintiff thus lacks standing to bring his claims.

Standing requires a showing that a plaintiff suffered an "injury in fact" that is concrete and particularized, and is actual or imminent rather than conjectural or hypothetical. *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.*, 528 U.S. 167, 180-181 (2000). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because the Plaintiff obtained, or intended to obtain magazines not through direct subscription, but by bartering with other inmates, which was prohibited by Jail policy,[5] he lacks standing because he was not personally aggrieved by the limitation on magazines. The Sixth Circuit addressed this very issue in *Percival v. McGinnis*, 24 Fed.App'x. 243 (6th Cir. 2001). In that case, two inmates, Percival and Garvins, brought First Amendment claims based on denial of access to publications directed at African-American interests. At issue was *Vibe* magazine. However, only Garvins had been denied the opportunity to subscribe to *Vibe*. Affirming the dismissal of Percival's claim, the Sixth Circuit held:

---

[4] Plaintiff claims that as a result of the policy, he was deprived of African-American oriented magazines, specifically *Don Diva, Black Entrepreneur, Ebony, Essence, Jet,* and *Maxim. Plaintiff's Deposition*, pp. 68-69.

[5] Plaintiff does not argue that the proscription on bartering is unconstitutional or otherwise improper.

> "Further, Percival lacks standing to challenge the district court's grant of summary judgment for the defendants on this issue. Garvins was the only party aggrieved by the denial of his access to the *Vibe* magazine, but he did not appeal the district court's dismissal of his claim. Since Percival was not aggrieved by the action of the defendants for this claim, he lacks standing to challenge the district court's conclusion that the defendants' conduct did not violate Garvin's constitutional rights*." Id*. at 8.

Plaintiff cites two older cases from outside the Sixth Circuit, *Jackson v. Godwin*, 400 F.2d 589 (5th Cir. 1968), and *Rivers v. Toyster*, 360 F.2d 593 (4th Cir. 1966). Both are distinguishable from *Percival*. In *Jackson*, unlike the present case, the plaintiff had actually subscribed to and received the *Amsterdam News*. Prison officials terminated his subscription when they discovered its African-American content. The issue of standing was neither raised nor discussed. Likewise in *Rivers*, the *Chicago Defender*, an African-American newspaper, was sent directly to the petitioner. The Court noted,

> "The complaint not only alleges a general denial of Negro newspapers to Negro prisoners, it also alleges that on February 15, 1965, an issue of the Chicago Defender sent to the petitioner was denied him not as an act of discipline for misconduct but because it was a Negro newspaper." 360 F.2d at 593-94.

As such, standing was not an issue in *Rivers*, and was neither raised nor discussed. By contrast, the Plaintiff neither subscribed to nor attempted to subscribe to any magazine. The claim that his inability to obtain prohibited magazines from *other* inmates through the barter system gave him standing was rejected by the Sixth Circuit in *Percival*:

> "However, many of these allegations involved actions taken against other prisoners and, since he was not the aggrieved party, Percival lacked standing to bring these claims." 24 Fed.App'x. at 246.

-11-

Because Plaintiff did not even attempt to subscribe to any magazines through legitimate channels, his claim is conjectural and hypothetical, not actual or imminent. His complaint must be dismissed for lack of standing.

## IV. CONCLUSION

I recommend as follows:

(1) That Defendants' motion to dismiss [Doc. #81] be GRANTED to the extent that individual Defendants Wickersham and Sanborn be dismissed, but that the County of Macomb be substituted as the proper Defendant;

(2) That Plaintiff's cross-motion for summary judgment [Doc. #91] be DENIED; and,

(3) That Defendant's motion for summary judgment [Doc. #86] be GRANTED, and the amended complaint DISMISSED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.

1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

    Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                           s/R. Steven Whalen
                                           R. STEVEN WHALEN
                                           UNITED STATES MAGISTRATE JUDGE

Date: February 4, 2016

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on February 4, 2016, electronically and/or by U.S. mail.

                                           s/C. Ciesla
                                           Case Manager